IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Criminal Action Number |
| | ) | 17-00214-1-CR-W-BCW |
| Keith L. Carter, | ) | |
| | ) | |
| Defendant. | ) | |

# REPORT AND RECOMMENDATION

Presently pending before the Court is the MOTION TO SUPPRESS EVIDENCE AND STATEMENT WITH SUGGESTIONS IN SUPPORT [Doc. 23] filed by defendant Keith L. Carter ("Carter") on October 16, 2017. On November 30, 2017, the undersigned held an evidentiary hearing on Carter's motion. Carter was present and represented by his counsel, Assistant Federal Public Defender Carie Allen. The government was represented by Assistant United States Attorney Alison Duning. At the evidentiary hearing, testimony was provided by Officers Douglas Davidson and Luke Abouhalkah and Detective Aaron Riley all with the Kansas City, Missouri Police Department. Additionally, the following exhibits were admitted into evidence

| Number | Description |
|---|---|
| Gov't #1-4 | Photographs |
| Gov't #5-9 | Citations/Summonses |
| Gov't #10-14, 22 | Kansas City Municipal ordinances |
| Gov't #15-16 | Dash cam videos |
| Gov't #17-21 | Kansas City Municipal Court records |

On the basis of all the evidence adduced at the evidentiary hearing, the undersigned recommends denial of Carter's motion and submits the following proposed findings of facts and proposed conclusions of law.

# PROPOSED FINDINGS OF FACT

1. On July 23, 2016, Douglas Davidson and Luke Abouhalkah were uniformed patrol officers with the Kansas City, Missouri Police Department assigned to the Central Division. Tr. at 3-4, 74-75.

2. On that date, at approximately 9:50 p.m., Officers Davidson and Abouhalkah were in their marked patrol car on routine patrol in the area of 6th Street and Grand Boulevard near Grand Slam Liquor in Kansas City, Missouri. Tr. at 5, 49, 75-76.

3. Based on law enforcement experience, the Grand Slam Liquor was a location that had experienced crime problems previously involving guns and narcotics. Tr. at 6-7, 76.

4. While watching the Grand Slam Liquor, the officers observed a gold Mercedes-Benz CL600 leave the parking lot and travel briefly eastbound on 6th Street. Tr. at 8, 53.

5. The officers then began following the eastbound Mercedes. Tr. at 9, 78.

6. Shortly thereafter, the Mercedes straddled the lane line and made a right-hand turn southbound on to Page Street, all without using a turn signal. Tr. at 8-12, 54-55, 78-79.

7. The officers then pulled the Mercedes over at the corner of 6th Street and Page Street for an observed traffic violation of lane straddling and failure-to-signal. Tr. at 9-12, 55-56.

8. After the vehicle was stopped, Officer Abouhalkah approached the driver's side of the Mercedes while Officer Davidson approached the passenger side. Tr. at 16, 59-60, 80.

9. Officer Abouhalkah asked the driver for his license and proof of insurance for the vehicle. Tr. at 16, 81.

10. The driver (identified as Carter) produced his license but did not have any proof of insurance. Tr. at 16, 17-18, 60, 81.

11. Carter looked in the glove compartment for his proof of insurance and then opened the center console briefly before slamming it shut. Tr. at 18-19, 61-62, 83-84.

12. When Carter slammed the center console shut, Officer Davidson believed that he detected an odor of marijuana coming from the Mercedes. Tr. at 19, 61, 67, 83.

13. The officers then asked Carter to step out of the car. Tr. at 20, 61-62, 84.

14. Carter refused to exit the vehicle and leaned over toward the center console in his vehicle. Tr. at 20, 62-63, 84.

15. The officers then removed Carter from the Mercedes, placed him under arrest for resisting, and escorted him to the patrol car, placing him in handcuffs. Tr. at 20, 28, 84-85.

16. Officer Davidson searched the Mercedes and found marijuana in the driver's side compartment and located two firearms (semiautomatic pistols) and associated ammunition in the center console. Tr. at 23-25, 62, 89-90.

17. The officers also found a large amount of cash in the vehicle and on Carter's person. Tr. at 26, 91.

18. After the officers were informed by radio that Carter had a prior felony conviction, they contacted a detective from the illegal firearms squad and Carter was placed on a 24-hour hold investigative arrest. Tr. at 30.

19. As a result of the traffic stop, Officer Davidson issued citations to Carter for lane straddling, turning without signaling, failure to provide proof of insurance, failure to wear a seat belt, and resisting arrest. Tr. at 35-37.

**PROPOSED CONCLUSIONS OF LAW**

In his motion to suppress, Carter seeks the suppression of all evidence obtained as a result of the search and seizure of his person and vehicle on July 27, 2016, arguing that the actions of law enforcement officers on that date violated the United States Constitution. Without question, individuals possess a privacy interest in their property that is protected by the Constitution. *See*, *e.g.*, *United States v. Gwinn*, 191 F.3d 874, 878 (8th Cir. 2000). To that end, the Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. CONST. amend. IV. As made clear in the express language of the Fourth Amendment, however, the Constitution does not forbid all searches and seizures, but only <u>unreasonable</u> searches and seizures. *Elkins v. United States*, 364 U.S. 206, 222, 80 S.Ct. 1437, 1446 (1960).

In many search and seizure scenarios, the question of legal authority (as well as reasonableness) is presumptively satisfied by a judicially-issued warrant.  In this case, Officers Davidson and Abouhalkah did not have a warrant to search Carter's Mercedes.  In that regard, the Supreme Court has cautioned:

> [S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions.

*Arizona v. Gant*, 556 U.S. 332, 338, 129 S.Ct. 1710, 1716 (2009) (*quoting Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514 (1967)).  In the present case, the government, however, seeks to justify the warrantless search of the Mercedes as a valid search growing out of a proper traffic stop and as a valid inventory search.  The Court finds that both rationales, in the alternative, justify the warrantless search in this case.

Undoubtedly, "[a] traffic stop constitutes a seizure under the Fourth Amendment." *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008).  However, it is well-settled that "[a]n officer who observes a violation of the law has probable cause to initiate a traffic stop, and such a stop comports with the Fourth Amendment." *Id*.  Similarly, "it is well established that a traffic violation – however minor – creates probable cause to stop . . . a vehicle." *United States v. Lyons*, 486 F.3d 367, 371 (8th Cir. 2007).   Indeed, such probable cause is not defeated even if there is an inference that that an officer conducts a traffic stop for an ulterior motive. *See*, *e.g.*, *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008).  In this case, based on the testimony and the dash cam video, Officers Davidson and Abouhalkah had probable cause to initiate a traffic stop of the Mercedes based on the officers' belief that Carter had straddled driving lanes and had made a turn without a proper signal..

4

Not every proper traffic stop justifies the warrantless search of the stopped vehicle and its contents. Nonetheless:

> If during a traffic stop, an officer develops a reasonable, articulable suspicion that a vehicle is carrying contraband, he has justification for greater intrusion unrelated to the traffic offense.

*United States v. White*, 42 F.3d 457, 460 (8th Cir. 1994). *See* also *Rodriguez v. United States*, 135 S. Ct. 1609, 1614 (2015) ("[T]he tolerable duration of police inquiries in the traffic-stop context is determined by the seizure's 'mission' – to address the traffic violation . . . and attend to related safety concerns."). In this case, given Officer Davidson's recognition of the smell of marijuana emanating from the vehicle, Officers Davidson and Abouhalkah had justification to extend this particular traffic stop and conduct a search of the Mercedes pursuant to the automobile exception.

The so-called "automobile exception" authorizes law enforcement officers "to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." *United States v. Davis*, 569 F.3d 813, 816 (8th Cir. 2009) (*quoting United States v. Hill*, 386 F.3d 855, 858 (8th Cir. 2004)). The Supreme Court has justified this departure from the traditional warrant requirement because of the lower expectation of privacy in vehicles and also their unique mobility. *California v. Carney*, 471 U.S. 386, 390-91, 105 S.Ct. 2066, 2069 (1985). Nonetheless, the Court has repeatedly limited the scope of this potentially broad exception to the warrant requirement by requiring a showing of probable cause. And in that regard, probable cause to search an automobile only "exists when there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Palega*, 556 F.3d 709, 714 (8th Cir. 2009).

5

Nonetheless, in applying the automobile exception to differing facts over the years, the Eighth Circuit has repeatedly noted that when law enforcement officers have smelled the odor of illegal drugs emanating from a vehicle, then "there was a reasonable probability [drugs were] located inside the vehicle and the officers had probable cause to search the entire vehicle for illegal drugs." *United States v. Brown*, 634 F.3d 435, 438 (8th Cir. 2011). *See also United States v. Neumann,* 183 F.3d 753, 756 (8th Cir.1999) (stating "detection of the smell of burnt marijuana . . . gave [the officer] probable cause to search the entire vehicle for drugs"). Based on this precedent, the Court concludes that the credible testimony of Officer Davidson that he smelled the odor of marijuana coming from Carter's vehicle provided Officers Davidson and Abouhalkah with probable cause to search the entire vehicle for illegal drugs – including the center console where the subject guns were found.

In the alternative, the Court also consider the viability of the warrantless search of the Mercedes as an inventory search. In many divergent circumstances, law enforcement officials – as part of their community caretaking function – are authorized to impound a suspect's vehicle. *United States v. Petty*, 367 F.3d 1009, 1011-12 (8th Cir. 2004). Moreover, when taking custody of property such as a suspect's vehicle, law enforcement officers may conduct a warrantless search and inventory of the contents of the vehicle in order to protect the owner's property, to protect the police against claims of lost or stolen property, and to protect the police from potential danger. *Colorado v. Bertine*, 479 U.S. 367, 372, 107 S.Ct. 738, 741 (1987). The central inquiry in determining whether such a warrantless inventory search is reasonable is a consideration of the totality of the circumstances. *United States v. Marshall*, 986 F.2d 1171, 1174 (8th Cir. 1993). To that end, "inventory searches conducted according to standardized police procedures, which vitiate concerns of an investigatory motive or excessive discretion, are

6

reasonable." *Id*. Consequently, to be constitutional, "[a] warrantless inventory search must be done pursuant to standard police procedures and for the purpose of protecting the car and its contents." *United States v. Best*, 135 F.3d 1223, 1225 (8th Cir. 1998).[1]

In this case, Officers Davidson and Abouhalkah were justified in conducting a warrantless search of the Mercedes prior to it being towed after the arrest of Carter for resisting. The Kansas City Missouri Police Department Tow Policy affords officers broad discretion to have vehicle towed following a driver's arrest. The decision to tow the vehicle under these circumstances was reasonable given the known crime in the area, the time of day (after dark), and the high value of Carter's vehicle. Having properly determined to have the car towed, Officers Davidson and Abouhalkah were required to perform an inventory search of the vehicle – a search that led to the discovery of the tow firearms.

Accordingly, it is

**RECOMMENDED** that the Court, after making an independent review of the record and applicable law, enter an order **DENYING** the MOTION TO SUPPRESS EVIDENCE AND STATEMENT WITH SUGGESTIONS IN SUPPORT [Doc. 23] filed by defendant Keith L. Carter ("Carter") on October 16, 2017.

Counsel are reminded that each has 14 days from the date of receipt of a copy of this report and recommendation to file and serve specific objections to the same. A failure to file and serve timely objections shall bar attack on appeal of the factual findings in this report which are

---

[1] The reliance on written policies is designed "to ensure that impoundments and inventory searches are not merely a ruse for general rummaging in order to discover incriminating evidence." *Petty*, 367 F.3d at 1012.

accepted or adopted by the district judge except upon the ground of plain error or manifest injustice.

                                        */s/ John T. Maughmer*
                                            **John T. Maughmer**
                                    **United States Magistrate Judge**